Anthony E. Maglio, J.
The defendant is charged with violating the Administrative Code of the City of New York, on the complaint of the Fire Department, for placing a refrigerated self-service vending machine, in a multiple dwelling, which machine offered bread, bakery products and soda for sale to the tenants only. (Italics mine.) The machine is located next to a refrigerated self-service vending machine which offered milk to said tenants, both machines being contained in an anterior corridor of the premises. Counsel for both sides conceded that said machines or room were not visible from the outside of said premises, nor the lobby or any building entrances and that there were no signs, either inside or outside of the premises which advertised or designated the location of said machines.
The Fire Department contends that the refrigerated machine which dispenses “Milk” is permissible, but the refrigerated machine which dispenses “ Bread, Bakery Products and Soda ”, both in the same building and same area and similarly located, is violative of section C19-107.0 of the Administrative Code of the City of New York. The section states the following:
“ C19-107.0 Permits — a. Except as otherwise provided in this article it shall be unlawful to maintain or operate a refrigerating system without a permit.
“ b. Permits shall not be required for systems installed in the residence portion of any building, nor for any system installed in vehicles, vessels or railroad cars, nor for any system employing water or air as a refrigerant, nor for any unit system having a compressor or prime mover of 1 hp. or less and used either for the purpose of human comfort cooling or for the chilling of drinking water in a free standing self-contained water cooler.
“ c. Applications for permits shall be submitted to the department on department forms and shall be signed by the owner of the premises, his duly authorized representative or the lessee seeking such permit. Plans or sketches showing machinery locations and pressure relief devices shall be submitted when required by the department ”.
The facts are indisputable that the machine in question contains a refrigerated unit and was operated without a permit. The Administrative Code gives authority and power to the Fire Commissioner to issue such permits. In February, 1962 the defendant owner received an order from the Fire Commissioner requiring “ 1 — the removal of the ‘ G-rocerette ’, 2 — or as an alternative submit proof that the building commissioner *842 approves of the use of such units in apartment buildings ” (italics mine),
The Corporation Counsel contends that this court does not have the jurisdiction to review the legality of the acts of the Fire Commissioner and that this court can only determine whether the defendant operated a refrigerated unit without a permit. The People further urge that the acts and orders of said Commissioner are only reviewable by the Board of Standards and Appeals and ultimately, by certiorari, as provided by section 666 of the New York City Charter and section 668e-1.0 of the Administrative Code, respectively. These are, of course, civil remedies.
The fact that other relief may exist does not bar a defendant, in a criminal proceeding, from setting up a defense that the acts complained of were not violative of any existing law. (See Matter of 109 Beach 29th St. Corp. v. Archer, 188 Misc. 769 and Matter of Wilk v. Gillroy, 11 Misc 2d 106.)
The question properly before this court is whether the placing of said “ Grrocerette ” violated the Administrative Code of the City of New York and is an improper or illegal use.
The premises herein is a multiple dwelling, the use of which is controlled by chapter 2 of section 22-00 of the Zoning Resolution of the City of New York and is in the “ Use Croup 2 ”, to be used for residential and accessory uses. (§ 22-12.)
An “ accessory use ” is defined in section 12-10 of the Zoning Resolution as follows:
“‘a’ Is a use conducted on the same zoning lot as the principal use to which it is related * * *
“ ‘b’ Is a use which is clearly incidental to, and customarily found in connection with, such principal use; and
“ ‘ c ’ Is either the same ownership as the principal use, or is operated and maintained on the same zoning lot substantially for the benefit or convenience of the owners, occupants, employees, customers or visitors of the principal use ”.
Clearly, the vending machine in issue is designated and designed solely for the convenience of the tenants in the building in which it was placed, and not for the general public, and therefore constitutes an accessory use of said dwelling. The Commissioner of the Department of Buildings of the City of New York has allowed and permitted the installation of milk vending machines, and said ruling was upheld in Tarr v. City of New York (12 Misc 2d 796 [1957]). No valid distinction can be made between the machine at issue, which dispenses bread, bakery products and soda, and the machine which vends milk and which is admittedly permissible.
*843 There does not appear to be any contention that the machine in issue is a fire hazard or is unsafe or that it would be more possible of use by the general public than the milk machine. Both the machine in issue and the permissible “ milk machine ” vend staples which are a necessity in every home. Milk, bread and bakery products are often the subject of home delivery by route salesmen. The mechanical rendition of this service cannot reasonably be held to interfere with the fundamental residential use of a building.
This court is bound by the decision of the Court of Appeals in Dellwood Dairy Co. v. City of New Rochelle (7 N Y 2d 374, 375-376 [1960]): “ As noted in Special Term, the use of a milk vending machine is but a different method of doing a traditional service for a householder. It is common experience that new times bring not only new problems but new ways and means of dealing with old ones. To illustrate, automation is now being turned to as a means of reducing labor costs not only in the industrial and commercial fields, but also in the domestic. The presence of a milk vending machine, such as the ones used here, in the basement of an apartment building which is not accessible to the general public, can have little, if any, adverse application to the character of the residential neighborhood. It is not commercialism such as ordinarily disturbs the quiet and peaceful enjoyment of the home but, rather, the convenient substitute for the route man. It is a device designed to perform ‘ a use customarily incidental and subordinate ’ to the normal enjoyment of an apartment house ” (italics mine).
The lower court decision of Mr. Justice Brennan in Dellwood Dairy Co. v. City of New Rochelle is especially applicable to the instant case: “ In considering the problem presented, it is important to remember that no employee or other person is in attendance at the machine to operate the same or to wait on customers; that no signs are present to indicate the availability of the commodity, which is an essential and not a luxury, that the public in general is not invited in any way to purchase the milk; that the machine is installed and maintained solely for the convenience and benefit of the tenants of each respective apartment building; and that if an outsider should take advantage of said convenience, he would do so without right or permission. There can be no question but that the product which the machine dispenses is as necessary and essential to the family home as the furnishing of water, gas and electricity and no man of reflection would reasonably contend that a coin-operated water meter, gas meter or electric meter would constitute such conduct of a commercial enterprise as is prohibited by the Zoning *844 Law which forbids a business use in a residential district. These machines supplement and, at times, supersede the traditional service afforded by the route salesman (milkman) who delivers milk to the various apartments and receives payment therefor. It is this court’s view that the mechanical rendition of this service does not interfere with the fundamental residential nature of the building any more than do the operations of the route salesman (milkman); nor is the said machine any more of a commercial operation than the traditional activity of the said route salesman. Applying the above test of a ‘ use customarily incidental ’, this court is of the opinion that these coin-operated, milk vending machines are just as customarily incidental to the operation of an apartment building as is the service rendered by the aforementioned traditional route salesman.” (Italics mine.)
This court cannot see any reasonable distinction between the coin-operated machine which vends bread, “the staff of life ” and milk. The court does not find any authority which permits the Fire Commissioner to delegate its responsibility to process permits for the machine in issue.
The action of the Fire Department in issuing the summons and complaint before this court was unwarranted and improper and accordingly said complaint is dismissed.