James Randall Creel, J.
On stipulated facts and unusually thorough briefs, there were submitted to this court eight criminal complaints alleging violation of article 2 of the Zoning Regulations of the City of New York.
In each of the cases a defendant had placed in the cellar or basement of a high-rise multiple dwelling situated in a zone restricted to residential use, in the County of Queens, a coin-operated “ Grocerette ” refrigerated vending machine (adjacent to previously installed milk vending machines which latter, it should be noted, are not included in these complaints). These Grocerette machines in controversy dispensed bread, pies, donuts, chocolate snap cookies, half dozen egg packs and three brands of soda.
In each case the Commissioner of the Department of Buildings and the Superintendent of Buildings, Borough of Queens, had duly served upon the defendants orders directing the discontinuance of the use of the said Grocerette machines, summonses were duly served upon the defendants for failure to comply or failure to remove, which alleged violations of varying but appropriate sections of the Administrative Code of the City of New York. The issuance of the said orders, their service upon the defendants, and the noncompliance of the defendants therewith are covered by the stipulated facts.
These routine small cases would not warrant any comment were it not for the fact that they are but a few of many more such cases which have recently been, and in all probability will in the future continue to be, thrust upon this court in an inconclusive contest between merchandisers who insist upon their right to introduce such Grocerette automatic vending machines into multiple dwellings and various city departments which seek to exclude them. It cannot be overlooked that the resolution of the basic problem presented by these small cases might have a far-reaching effect upon the future use or uses of the *837 basements, cellars, and other “non-living spaces” of the multiple dwelling wherein such Grocerettes have been located and even upon future urban life, or at least so much of it as is to be lived in the multiple dwelling.
At the time of submission of these cases the query was raised as to whether the questions here presented were justiciable questions which could or should be resolved by a Criminal Judge and the judicial process, or whether they should not appropriately be solved by the City Planning Commission, the Board of Estimate, the Board of Standards and Appeals and the City Council, and legislative and/or administrative studies and action. It should be noted the problem herein is presently the subject of administrative and legislative study and consideration. The City Planning Commission on July 15,1964, proposed amendments to the current Zoning Resolution of the City of New York which would have resolved the problems herein, but the Board of Estimate on August 20, 1964 failed to approve and rejected said proposal.
Does this apparent inability of these two concededly appropriate governmental agencies to promptly agree upon a solution suggest more than this problem may have complicating ramifications which require more study and effort before a satisfactory over-all plan and solution can be formulated? Does this delay necessitate or warrant a rushing in of the judiciary and the limited judicial process for a more expeditious however piecemeal, solution of this problem, as in these cases, soda pop, egg pack, cookie, and pie vending Grocerettes?
The impatient eagerness of these litigants and the insistent ardor of their attorneys in an avid fervor for more immediate solution of the problems here presented have indeed prevailed upon courts to venture, at least piecemeal, into this nonjusticiable quagmire of future city planning and policy (as to milk, Dellwood Dairy Co. v. City of New Rochelle, 7 N Y 2d 374 [1960], and as to bread, People v. Page, 36 Misc 2d 840 [1962]).
And I and my brethren of this busy court have likewise heretofore succumbed and been led or pressured by the urgent, compulsive persuasions of these impatient litigants and their zealous counsel to rule upon the propriety of similarly located Grocerette coin machines vending pies, cakes, baked goods, and soda pop. (See People v. Loos and People v. Chiarello, Criminal Court, Queens County, Docket Nos. [1964] 86/64 and 407/64; People v. Martin, Criminal Court, Queens County, Docket No. [1963] 1867/63; People v. Vernon, Criminal Court, Queens County, Docket No. [1964] 1130/64; People v. Schwarts, People v. Berkowitz and People v. Landsman, Docket Nos. [1965] 3439, *838 3440, 3441, 3669, 2204, 3700, all of 1965, and the Criminal Court, Queens County, People v. Stavin and People v. Berkowitz, Docket Nos. 1062, 1063 and 476, decided the 24th of May, 1966 in the Criminal Court, Queens County.)
Upon further consideration, I for one, most seriously question whether such decisions have rendered any constructive service; such decisions at best are but an attempted piecemeal solution of the over-all problem presented.
If a Judge may be heard to explain his past error, may I submit that every civilization has found or invented some means or other for resolving these problems which it developed; our modern civilization for the solution of its problems increasingly turns to the courts and the judiciary in much the same fashion as the ancient Greeks called upon their Delphic Oracle, and the ancient Romans called upon their Augurs, so we moderns resort to our courts and Judges for solution of our problems even though they may be as nonjustieiable as this problem here presented of future city and metropolitan planning and policy.
Is not restraint by the judiciary indicated when the insistent pressures of persuasive counsel and insistent litigants seek to lead us into the determination of these problems which are under the constitutional division of powers within the province of a department of government other than the judiciary? Will not the failure of the judiciary to exercise that indicated restraint by accepting and deciding all problems brought to their courts by impatient litigants and their fee-hungry counsel undermine that constitutional division of powers and hence the Constitution, turn the dreamed of ‘ ‘ Buie of Law ’ ’ into a rule by courts. So much for the past error and the resolve for restraint.
Accordingly it is held that the orders of the Commissioner of the Department of Buildings and the Superintendent of Buildings of Queens County were an exercise of power and jurisdiction duly conferred upon them by the Administrative Code of New York City. These orders, on their face, are in regular and proper form and were duly served upon the defendants. The propriety, reasonableness or desirability of such orders should not be reviewed by this court in a criminal prosecution for disobedience of such orders. (People v. Erceg, 13 A D 2d 950; People v. Namro Holding Corp., 10 A D 2d 702, affd. 8 N Y 2d 1131; Namro Holding Corp. v. City of New York, 17 A D 2d 431; People v. Gillman, 6 A D 2d 899; People v. Ludwig, 262 App. Div. 912; People v. Feinberg, 48 Misc 2d 187 [1965].)
*839 Adequate review of these orders could be had before the Board of Standards and Appeals under subdivision 6 of section 666 of the New York City Charter (see People v. Ludwig, 262 App. Div. 912, supra; Matter of Towners Mgt. Corp. v. Thatcher, 271 N. Y. 94; People v. Namro Holding Corp., 10 A D 2d 702, affd. 8 N Y 2d 1131 [1960], supra; People v. Erceg, 13 A D 2d 950, supra).
Nor are the administrative or legislative forums of the New York City Planning Commission, the Board of Estimate or the City Council closed to the defendants by more than their impatience for expedition. The court rejects the contention that it should or can substitute or superimpose its judgment or preference in interpretation of the Zoning Resolutions for those of the Commissioner of Buildings.
There has been no suggestion herein of any violation of any constitutional right of the defendants, and accordingly this court must give full force and effect and aid in the enforcement of these orders issued by the Commissioner of Buildings pursuant to the authority vested in him by the City Charter and the Administrative Code of the City of New York.
The fact that the complainant may have selected as the forum this Criminal Court for the enforcement of its orders, which orders this court should not and cannot collaterally review, will have a material and mitigating bearing upon any punishment to be administered by this court, but such circumstance affords no excuse for an expansion of the jurisdiction of this Criminal Court to review the merits of such orders of a co-ordinate department of government which are regular on their face, issued pursuant to a statutory grant of authority whose constitutionality is not challenged.
The defendants have disregarded and disobeyed said orders and must be found guilty.